518 A.2d 147

**ANNE ARUNDEL COUNTY, Maryland**

v.

**Richard Wayne BEATTY, et ux.**

No. 344, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Dec. 8, 1986.

Robert M. Pollock, Asst. County Solicitor (Stephen R. Beard, County Solicitor on the brief), Annapolis, for appellant.

William J. Boehm, Annapolis, for appellees.

Argued before MOYLAN, WILNER and BISHOP, JJ.

WILNER, Judge.

Appellees, we are told, are in the land clearing business. In February, 1985, they purchased a 12–acre tract of land in Anne Arundel County for use in that business, intending to store logs, wood chips, and firewood on it. The land is zoned for that purpose.

Upon taking title, appellees removed the trees and other vegetation from the land in order to have room to store the wood. Unfortunately, they neglected to obtain a grading permit. In March, 1985, after an on-site inspection, the county informed appellees that their clearing and grading of the property were in violation of § 12–2001[1] of the county grading ordinance and directed that they perform the following remedial work:

"1. Restore the stream at the referenced site by removing clearing rubble and dirt from the channel and the 100 year flood plain of the unnamed tributary to Severn Run. This work must be completed within (15) fifteen days of receipt of this letter. All rubble must be taken to an approved landfill.

2. Install interim sediment controls to prevent sediment from entering the stream within (15) fifteen days from receipt of this notice.

3. Permanently stabilize all disturbed areas on-site by liming, fertilizing, seeding, mulching and tacking within (30) thirty days from receipt of this notice."

---

1. Now § 2–201 of art. 21 of the County Code.

Appellees undertook to do some remedial work, but the county regarded the measures taken as insufficient, and so, on June 28, 1985, filed a complaint in the Circuit Court for Anne Arundel County for injunctive and other relief. In particular, it asked that appellees:

(1) "be ordered to take immediate action to stabilize the soil and grounds of the subject property in order to prevent further erosion and damage to the property, as may be required by the Anne Arundel County Department of Inspections and Permits";

(2) "be permanently enjoined from any further grading, stripping of trees or top soil or any other activity on the subject property other than the stabilization as may be required as set forth above, until such time as they obtain a permit from the Anne Arundel County Department of Inspections and Permits";

(3) "be ordered to prepare or cause to be prepared, a grading plan in accordance with the Anne Arundel County Code to stabilize the subject property and bring it into conformance with the said County grading and sediment control law and thereafter undertake action to implement said plan"; and

(4) "be enjoined from using or permitting the use of the subject property for any purpose or use, except in accordance with any grading permit that may be issued by the Anne Arundel County Department of Inspections and Permits or by Order of this court."

In addition, relying on Md.Code Ann.Nat.Res. art., § 8–1108 (Supp.1986), the County asked for damages equal to "double the cost of correction that may be required or undertaken."

At trial on this complaint, the county produced as a witness Linton Pumphrey, a registered professional engineer. Mr. Pumphrey inspected appellees' property in August, 1985. He found that the stabilization measures theretofore undertaken by appellees were inadequate, concluded that irreparable harm would accrue if proper corrections

were not made, and prepared a cost estimate of what he believed was necessary to bring the property into compliance with the law. That estimate, placed into evidence as an exhibit, came to $50,730. It required the seeding of some 10 acres, the removal of berms and traps constructed by appellees, and some incidental work.

In contrast to the evidence given by Mr. Pumphrey, appellees produced C. Douglas Meekins, a registered professional engineer, who had also inspected the site. Mr. Meekins stated that the property could be brought into compliance without having to do all that Mr. Pumphrey thought necessary. In particular, and taking account of the intended use of the property, Mr. Meekins found no need to reseed 10 acres, which accounted for about half of the cost estimated by Mr. Pumphrey. It was a clear case of a disagreement between two experts as to what was required. Meekins believed that a satisfactory intermediate correction plan could be prepared and submitted to the county within two to three weeks, and that certain steps could be taken immediately, even while such a plan was being prepared and reviewed by the county.

Evidently impressed by the testimony of Mr. Meekins, the court, immediately following the hearing on October 28, 1985, directed appellees (1) within 15 days to submit an approved plan and take immediate steps to repair a broken dike, (2) to "commence work on a plan for permanent stabilization under existing conditions" and obtain all necessary permits within five weeks, (3) to complete all work "in accordance with the aforementioned plan" within five weeks of approval, and (4) to do no further grading or excavation without first obtaining a grading permit. A decision with regard to "fine or penalty" was deferred until January 27, 1986.

Court reconvened on January 27. The county engineer, Charles E. Matheny, testified that, within two weeks, appellees had submitted an interim plan that was approved by the county and that some, but not all, of the work required

under the plan had been done. He said that the dike had been repaired and that, while certain stone work required under the plan had not been done, the work done had, in fact, curtailed the erosion. Indeed, in terms of the required interim control measures, the county attorney acknowledged that appellees were in substantial compliance with their plan. Nonetheless, the court found that the stone work should have been installed and gave appellees until February 24 to do it. Once again, the question of monetary relief—the county's claim for double the $50,730 testified to by Mr. Pumphrey—was held *sub curia.*

Three days later, the court entered an order finding a violation of Nat.Res. art., § 8–1104, but awarding judgment in favor of the county for only $500. The county has appealed that judgment, complaining that the court erred in failing to award "damages required by Section 8–1108(c)(1), Natural Resources Article...." Appellees, apparently content with the $500 award, have not cross-appealed.

At issue is § 8–1108(c)(1), which is part of the subtitle of the Natural Resources article dealing with sediment control. Section 8–1103 authorizes counties to issue grading permits, sets certain requirements for the issuance of such permits, and directs the counties to adopt grading ordinances necessary to carry out the State requirements. Section 8–1104(a) prohibits a person from clearing, grading, transporting, or otherwise disturbing land for any purpose unless the appropriate soil conservation district has approved the change.

Section 8–1108 provides certain penalties and sanctions for the violation of the subtitle. Subsection (a) makes a violation a misdemeanor and subjects the violator to imprisonment and fine. Subsection (b) authorizes injunctive relief, and subsection (c) provides:

"(1) In addition to any other sanction under this subtitle, a person who fails to install or to maintain erosion and sediment controls in accordance with an approved plan shall be liable to the county, municipality, or the State, as appropriate, in a civil action, *for damages in an*

*amount equal to double the cost of installing or maintaining the controls.*

(2) Any county, municipal, or State agency that recovers damages in accordance with this subsection shall deposit them in a special fund, to be used solely for:

(i) Correcting to the extent possible the failure to implement or maintain erosion and sediment controls; and

(ii) Administration of the sediment control program." (Emphasis added.)

Provisions complementary to § 8–1108(c) are found in the county grading ordinance, and they help to explain the purpose and meaning of the State statute. Section 2–204 of the county law (Anne Arundel Co. Code, art. 21) requires an applicant for a grading permit to post a bond or other security that complies with § 2–209. The purpose of the bond, according to § 2–209(c), is to ensure that the site will be restored to a satisfactory condition "whenever the work authorized by the permit is not satisfactorily completed." Subsection (e)(4) of § 2–209 provides that, on default, the applicant continues to be bound for

"(i) the costs and expenses necessary to complete the work in accordance with the approved plans and specifications or an approved modification of the plans and specifications;

(ii) the costs and expenses necessary or liabilities that may be incurred to stabilize in accordance with the stabilization plan for erosion control presented by the applicant to and approved by the County; or

(iii) payment to the County in cash or by certified check in a sufficient amount to equal the cost of performing the necessary work."

Subtitle 6 of the county law deals with enforcement and penalties. Section 2–601 provides a procedure under which the county can obtain the security posted by the applicant when the secured work fails to conform with the permit or with approved plans and specifications. Section 2–602 states that, if the security obtained under § 2–601 is insuffi-

cient "to abate imminent and substantial harm to the stability of the site," the county may "perform sufficient work at the site to eliminate public safety problems and to provide environmental stabilization and protection." The cost of the county's performing that work is defrayed in two ways. Section 2–105 permits the county comptroller to allow an expenditure from a revolving fund created to support the cost of that work, and § 2–602(c) authorizes eventual recovery of the cost from the applicant:

> "*The cost of work performed by the Department* under the provisions of this section shall be levied and collected from the owner of the property in the same manner as County real property taxes and shall have the same priority rights, bear the same interest and penalties, and in every respect be treated as County real property taxes. The interest rate charged to the property owner shall be at the maximum legal rate."

(Emphasis added.)

The clear thrust of both the State law (§ 8–1108(c)(1)) and the county law, with respect to an action for damages, is to permit the county to recover from the owner/applicant any cost to which it is put in doing what the law requires the owner/applicant to do. Although the State provision, to the extent of allowing double damages, is somewhat in the nature of a penalty, its principal function is a compensatory, not a punitive, one. This is in accord with the commonly accepted notion of "damages" in both contract and tort actions. *See Kahn v. Carl Schoen Silk Corp.*, 147 Md. 516, 533, 128 A. 359 (1925): "The underlying principle of damages for the breach of a contract is compensation; or, in other words, to award such a sum in money as would put the injured party in the same position as if the contract had been fully performed by the party responsible for its breach." *See also,* in the tort context, *Weishaar v. Canestrale,* 241 Md. 676, 685, 217 A.2d 525 (1966), where the Court quoted from *Guido v. Hudson Transit Lines,* 178 F.2d 740 (3d Cir.1950): "Damages are supposed to compensate the injured person for the wrong which has been done him."

Upon this background, the weakness in the county's position becomes apparent. In the first place, there is no evidence that the county either *has* done any work at the site (or incurred any cost of restoration) or that it necessarily ever will be required to do such work (or incur such cost). The court, through injunctive order, directed appellees to do the restoration work that the court found necessary, and that work has apparently been done by them, at their expense. For what purpose, then, shall they pay damages to the county? Second, and equally important, it seems clear that the court did not accept Mr. Pumphrey's notions of what was required; and, in light of Mr. Meekins' testimony, its finding in that regard certainly was not clearly erroneous. Thus, even if the county were somehow entitled to recover damages for injuries it never suffered, it is not entitled, as a matter of law, to the damages asserted by Mr. Pumphrey. We accordingly find no reversible error.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.